## THE EMPEROR.

### (District Court, E. D. New York. February 7, 1902.)

1. COLLISION—SAILING VESSEL AND TUG WITH TOW—IMPROPER MANEUVER.
    Evidence considered, and *held* to show that a collision in East river between a sailing lighter and a car float, projecting ahead of the tug by which it was being towed, resulted from the lighter's going about on the other tack nearly in front of the tug and tow, and, failing to fill at once, being drifted by the tide against the float, which had stopped, and was making sternway at the time, and that the lighter was in fault for such maneuver, and contributed to her injury.

2. SAME—VIOLATION OF STATUTE.
    A tug navigating with her tow too near the Brooklyn shore, in passing down East river, in violation of the statute, where its observance was possible, though not convenient, must be held in fault for a collision there occurring, although she was not otherwise in fault.

In Admiralty. Suit for collision.

James J. Macklin, for libelant.
Carpenter & Park, for claimants.

THOMAS, District Judge. The sailing lighter Carrie, loaded, navigated by two men, was going up the East river on a flood tide, running two and a half or three miles per hour, with the wind shifting from northeast to northwest, between 8 and 8:20 o'clock a. m. She was on the port tack, somewhat below Jay street, Brooklyn, when she went about on the starboard tack, and was pointing across the river, when her bow was struck by car float No. 6, projecting about 150 feet from the starboard bow of the tug Emperor, bound for Jersey City. The master of the Carrie states that the collision occurred about 300 feet off the Brooklyn shore; that at the time the Carrie started to go about she was 200 feet from that shore; that the car float and tug were 100 feet farther in, and about 100 feet upstream. Hence the Carrie, in length over all about 100 feet, went into the wind, so as to move her bow on a flood tide, in the direction of a long and loaded car float, 100 feet upstream and 100 feet inshore. The Emperor's evidence is to the effect that the Carrie went about in front of her, and that the tug had stopped some minutes before, and was backing and making sternway at the time of the collision. If the Carrie's claim be true, the float must have traveled out of her course the alleged distance of 100 feet that separated the vessels, plus the greater part of the length of the Carrie, straightened across the river, in order to bring the float in collision with the Carrie's bowsprit. It is more credible that the Carrie went about more nearly in front of the float, and not filling at once, as appears, was carried by the flood tide upon the float. She contributed to the injury. The Emperor was not at fault, save as she was navigating too near the Brooklyn shore, in violation of the statute, whose observance was possible, but not convenient or advantageous. The court is bound by the statute, and will enforce it. If it should not exist, let the legislature repeal it; it should not be abrogated by the courts. This statute was not involved in The Bayonne (D. C.) 110 Fed. 462.

The damages will be divided.